UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| BOBBY LEE WADE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL NO. 3:12cv554 |
| DIRECTOR OF NURSING, MIAMI CORRECTIONAL FACILITY, | ) ) ) ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant, Director of Nursing, Miami Correctional Facility ("the Director"), on June 5, 2014. The plaintiff, Bobby Lee Wade ("Wade"), who is proceeding *pro se*[1], has failed to file a response.

The motion for summary judgment will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in

---

[1] On June 5, 2014, Wade was given notice of the motion for summary judgment and informed of his need to file a response or risk having summary judgment entered in this case.

that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

Wade was incarcerated at the Miami Correctional Facility at all times relevant to his Complaint. Wade originally filed this action for alleged violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. §1983 and for injunctive relief against Karen Cummings, who was the Director of Nursing at the Miami Correctional Facility during the relevant time period. During the course of this litigation, Karen Cummings died.

This Court therefore dismissed the individual claim against Karen Cummings for deliberate indifference to Wade's medical needs and allowed Wade to proceed solely on his claim for injunctive relief against the current Director of Nursing at the Miami Correctional Facility in her official capacity. In his request for injunctive relief, Wade asks this Court for an order compelling Defendant to provide him with dental treatment to repair his tooth.

The Director argues that summary judgment is appropriate because the Director does not have the power or authority to provide Wade with the dental treatment that he seeks and Wade has already been offered dental treatment which he declined, so his request for injunctive relief is moot.

Lee Ann Ivers is a registered nurse and the Director of Nursing at the Miami Correctional Facility. As the Director of Nursing, she rarely treats offenders personally. Rather, her job is to oversee the nursing staff, both administratively and with regard to their treatment of offenders.

She does not supervise or oversee the providers, *i.e.* the nurse practitioners, doctors, or dentists. She is not responsible for scheduling offenders to see the doctor, dentist, or nursing staff within the prison and is not responsible for scheduling offenders to go to outside hospitals for specialty consultations or treatment. Part of Nurse Ivers' job as Director of Nursing is to help offenders informally resolve disputes or complaints about the nursing staff. If she cannot help the offender resolve his issue with the nursing staff, the offender can then file a grievance through the prison grievance system.

Wade entered the Miami Correctional Facility on February 16, 2010. He submitted a Request for Healthcare on April 15, 2010 asking for his wisdom teeth to be removed. One of the dentists, Dr. Olinger, examined Wade on April 19, 2010. Wade complained of pain in the upper and lower left wisdom tooth. Dr. Olinger noted that teeth #16 and #17 were both partially impacted and that #17 had chronic pericoronitis (infection). Dr. Olinger ordered a panoramic x-ray and noted that he would evaluate it to see if Wade needed to be referred to Dr. Smith, the oral surgeon. Dr. Olinger examined Wade again on April 26, 2010. Based on the x-ray, he scheduled Wade for an extraction. He also advised Wade to use warm salt water rinses 3 times a day.

Dr. Olinger saw Wade again on May 4, 2010 for extraction of tooth #17. However, after injecting one carpule of Lidocaine, Wade's left condyle became dislocated and his jaw locked open. It took about 10 minutes to reset the condyle and Wade was very sore afterwards. Dr. Olinger opted not to proceed with the extraction and referred Wade to Dr. Smith. Dr. Olinger advised Wade to use warm, moist compresses to the left TMJ for the rest of the day. On May 13, 2010, Dr. Smith extracted tooth #17 without incident. Dr. Smith prescribed Ibuprofen for pain.

Wade was seen in nursing sick call on June 19, 2010 for complaints of a "locked jaw." He claimed to have trouble talking, but was able to move his jaw. He reported that his problems started when he had his wisdom tooth pulled. The nurse did not note any grimacing, but gave Wade some moist warm heat to the neck/jaw area and told him to relax and lay down in observation.

On October 7, 2010, Wade submitted a Request for Interview to Karen Cummings, who was the Director of Nursing. He claimed that on September 27, 2010 at dinner time, he was eating a brownie and bit into a screw and chipped his tooth. He stated that now the left side of his jaw and tooth hurt and he could barely eat. He also submitted a Request for Healthcare the same day with the same information. The Request for Interview was received on October 11, 2010 by Karen Cummings and she referred the information to the dental staff. After Karen Cummings referred Wade's complaints to the dental staff, Wade was triaged by dental staff that day. Wade was diagnosed with left marseter (jaw muscle) spasm. He had decreased range of motion and was told to use heat and cold treatment.

The dentist, Dr. Noll, examined Wade on October 14, 2010. Wade was still having discomfort. Dr. Noll advised him to continue exercises and warm compresses to relax the muscle. Dr. Noll examined Wade again on October 25, 2010. Dr. Noll offered to smooth tooth #9, the tooth that was allegedly chipped from the screw in the brownie, but Wade elected not to smooth it, stating it no longer felt rough and he was afraid that smoothing #9 might make it look shorter than #8.

In support of summary judgment, Defendant argues that Lee Ann Ivers, R.N., the Director of Nursing at the Miami Correctional Facility, cannot order or demand that Wade be

4

provided with dental treatment as that is not within her scope of authority as a nurse or as the Director of Nursing. Rather, if Wade wants dental treatment, he has to submit a Request for Healthcare asking to see the dentist. The appropriate staff member will then schedule Wade to see the dentist. It is then up to the dentist to determine what treatment is necessary for Wade. According to Wade's medical records, the dentist provided treatment to Wade and offered to smooth the chip in his tooth that was allegedly injured by biting into the screw and Mr. Wade declined the treatment. The Director of Nursing has no power or authority to second-guess the treatment offered by the dentist or force the dentist to provide specific treatment.

Defendant argues that Wade cannot meet the required elements for injunctive relief. In order to succeed on a motion for preliminary injunction, Wade must establish that (1) he has no adequate remedy at law; (2) he will suffer irreparable harm without the injunction and this irreparable harm exceeds the harm suffered by the other party as a result of the injunction; (3) he has a reasonable likelihood of success on the merits; and (4) any harm to the public interest stemming from the injunction is tolerable in light of the benefits achieved by the injunction. *Old Republic Insurance Company v. Employers Reinsurance Group*, 144 F.3d 1077, 1081 (7th Cir. App. 1998).

In the present case, Wade has not established that he has no adequate remedy at law or that he will suffer irreparable harm if the injunctive relief is not granted. Wade has an adequate remedy at law, and one that he has already exercised, which is to file a Complaint seeking monetary relief under 42 U.S.C. Section 1983. Furthermore, Wade has not established that he will suffer irreparable harm without dental treatment. An injury is only irreparable for purposes of granting preliminary injunctive relief if it cannot be remedied through monetary relief at trial. *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Company*, 414 F.3d 700, 703 (7th Cir. 2005). Wade can file suit and

seek compensatory and other damages from the dentist or any of his medical providers at the prison if he feels he has been harmed. He can also request and receive dental treatment at any time by simply submitting the proper form and asking for treatment. Wade therefore has adequate remedies and his injury is not irreparable.

Wade also cannot establish that he will suffer irreparable harm because he has not produced any expert medical testimony that his condition requires any dental treatment. Defendant has provided evidence of what dental treatment Wade has received and what treatment he has been offered. Wade's own self-serving, non-medical speculation that his tooth needs to be treated is not enough to establish that he will suffer irreparable harm if his request for injunctive relief is not granted. This is sufficient basis to deny injunctive relief and grant summary judgment.

Additionally, Wade cannot establish that he has a reasonable likelihood of success on the merits of this case and therefore his request for preliminary injunctive relief will be denied on this basis also. The medical records show that Wade's dental complaints have been addressed and he was offered treatment for his chipped tooth, but he declined because of the way it might look. No reasonable jury could find that anyone involved in Wade's medical care was deliberately indifferent to Wade's medical needs. Prisoners are not entitled to demand specific care under the Eighth Amendment and therefore Wade cannot succeed on a claim just by demanding dental treatment that has already been provided and offered to him. *Johnson v. Doughty*, 433 F.3d. 1001, 1013 (7th Cir. 2006); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). Because Wade has failed to provide expert medical testimony that his tooth mandates dental treatment other than what has already been provided and offered to him, his request for injunctive relief must be denied.

Even if Wade had met the required elements for injunctive relief, the Court would then weigh the harm to the parties if that relief was granted. *Incredible Tech., Inc., v. Virtual Tech.,*

6

*Inc*. 400 F.3d 1007, 1011 (7th Cir. 2005). Defendant argues that if this Court grants Wade's request for injunctive relief, the harm to this Defendant will far outweigh any harm to Wade if his request is not granted. Wade's alleged harm is that he has a chipped tooth he wants treated, even though he has already declined the dental treatment offered to him. If this Court allows Wade to demand that he receive specific care, care that he has already declined, it will set a precedent by which a large number of offenders who desire specific care without medical necessity can demand specific care. This precedent will greatly inhibit the ability of Defendant and every doctor practicing within the prison system to provide medical care to prisoners. Not only will Defendant suffer great harm if Wade's request for injunctive relief is granted, but this Court and the court system will suffer harm as well. If prisoners are entitled to demand specific care, even if it has already been provided or offered to them, this Court will likely see a flood of requests for injunctive relief from countless numbers of prisoners. The courts should give deference to prison administrators in running their facilities. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Courts should also be hesitant to interfere with the discretion afforded prison officials. *Preston v. Thompson*, 589 F.2d 300,303 (7th Cir. 1978). As the harm to the Defendant outweighs the harm to Wade, an injunction would not issue even if wade had met the elements for injunctive relief.

Additionally, it is clear that Wade's request for injunctive relief is moot. Wade seeks dental treatment for the tooth he chipped when he bit into a screw. Wade has already been seen three times by the prison dentist for this issue. The dentist offered to smooth out the tooth that was chipped, but Wade declined because he thought that tooth would then look shorter than the one next to it. There is absolutely no need for injunctive relief because Wade has already been provided with the relief that he seeks. If he has changed his mind and now wants his chipped tooth smoothed, he can simply submit a request to see the dentist. Accordingly, for all the above

7

reasons, summary judgment will be granted.

## Conclusion

On the basis of the foregoing, Defendant's motion for summary judgment [DE 70] is hereby GRANTED.

Entered: September 10, 2014.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court